IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ADRIAN BERBER, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>HUTCHISON TREE SERVICE and CRAIG HUTCHISON,<br><br>*Defendants.* | CA No. 5:15-CV-143-D |

**DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTIONS FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; APPROVAL OF SETTLEMENT ADMINISTRATOR; APPROVAL OF PLAINTIFF'S NOTICE OF SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE AWARD**

I, Gilda Adriana Hernandez, declare as follows:

1. I am an attorney in good standing, duly licensed and admitted to the North Carolina Bar. I am an attorney with the Law Offices of Gilda A. Hernandez, PLLC ("GAH"). The testimony set forth in this Declaration is based on first-hand knowledge, about which I could and would testify competently in open Court if called upon to do so, and on records contemporaneously generated and kept by my Firm in the ordinary course of its law practice.

2. I provide this Declaration for the purpose of setting forth the background and qualifications of Plaintiff's counsel to act as Class Counsel in this action and to describe the work completed by my firm in this action, our rates, and expenses incurred in the course of this litigation and to support Plaintiff's Motion for Preliminary Approval of the Settlement.

***Adequacy of Counsel***

3.  I graduated from University of Illinois, Chicago with a B.A. in Criminal Justice and received my Juris Doctor degree from Southwestern University School of Law, Los Angeles, California.

4.  In 1997, I started my wage and hour career. First, as a United States Department of Labor, Wage and Hour ("USDOL-WHD") official, enforcing and administering wage and hour laws pursuant to the Fair Labor Standards Act ("FLSA"); Family Medical Leave Act ("FMLA"); Davis Bacon Act ("DBA"); and Service Contracts Act ("SCA"). As a USDOL-WHD official, I investigated employers to determine their compliance with all relevant wage and hour laws, regarding overtime, minimum wage, prevailing wages, child labor, misclassification of salaried employees, and H-1(B) issues, in addition to, providing employers with guidance on achieving and maintaining compliance. In 2003, I interned with the United States Department of Labor – Solicitor of Labor, where I conducted legal research on relevant wage and hour laws and advised Regional Solicitors of Labor on whether cases were suitable for wage and hour litigation.

5.  Since 2008, I have worked in private practice, representing employees exclusively in collective/class action litigation for alleged violations of the FLSA and relevant state wage and hour laws. Since that time, I have represented thousands of workers and recovered millions of dollars in both nationwide and local actions. In 2011, I tried the first of its kind, NCHWA wage and hour class action in Mecklenburg County, obtaining a verdict on behalf of a class of janitorial workers, resulting in actual and liquidated damages, pre-judgement interest, and attorneys' fees and costs.

6.  GAH, together with Lee & Braziel, LLP ("L&B"), are Class Counsel for Plaintiffs and Rule 23 class members. Our firms represent plaintiffs in a wide variety of employment

matters, including individual and class action litigation involving wage and hour.

7. Class Counsel have substantial experience in prosecuting and settling wage and hour collective/class actions and are well-versed in wage and hour law and class action law.

8. Given the substantial experience in prosecuting wage and hour class and collective actions, I have been appointed Class Counsel based on that experience. *See Tomkins v. Amedisys, Inc.,* No. 3:12cv1082 (WWE), 2014 U.S. Dist. LEXIS 3660 (D. Conn. Jan. 13, 2014) (represented over 2500 clinicians in a nationwide action involving in excess of 35 states; settlement approved for $8 million in 2016); *Rindfleisch v. Gentiva Health Services, Inc.,* No. 1:10-cv-3288-SCJ, 2011 U.S. Dist. LEXIS 57949 (N.D. Ga. Apr. 13, 2011) (represented initially over 1,000 clinicians in a nationwide collective action in over thirty states; settlement approved for $3.3 million in 2017); *(Velasquez-Monterrosa v. Mi Casita Rests.,* No. 5:14CV448-BO, 2016 U.S. Dist. LEXIS 56089 (E.D.N.C. Apr. 26, 2016) ("defendants have not specifically objected to plaintiffs' counsel's fitness to serve as class counsel, and the Court finds that plaintiffs' counsel possess the necessary qualifications") (affecting over 150 individuals) ; *Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13CV810-F, 2015 U.S. Dist. LEXIS 1320225 (E.D.N.C. Sep. 28, 2015) ("named plaintiffs are also represented by competent and qualified counsel. Counsel has extensive experience litigating similar matters, including other wage and hour suits in North Carolina") (affecting over 200 workers); *McLaurin v. Prestage Foods Inc.,* 271 F.R.D. 465, 479 (E.D.N.C. 2010) ("Prestage does not dispute that counsel for Plaintiffs have sufficient experience to represent a class, and the court finds that plaintiffs' counsel possess the necessary qualifications….Gilda A. Hernandez shall serve as counsel for the class") (affecting approximately 1,800 Class Members); *See Mitchell v. Smithfield Packing Co.*, 2011 U.S. Dist. LEXIS 108974, *10 (E.D.N.C. 2011)[1]

---

[1] Smithfield cases collectively affected approximately 3,500 Class Members.

("…….Gilda Hernandez [who is a] capable trial counsel with substantial experience in complex civil litigation, including class action lawsuits"); *Horne v. Smithfield Packing Co.*, 2011 U.S. Dist. LEXIS 108978, *10 (E.D.N.C. 2011) ("The court finds that Ms. Hernandez ….will fairly and adequately represent the interests of the class"); *Romero v. Mountaire Farms Inc.*, 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011) ("Mountaire does not dispute that counsel for plaintiffs have sufficient experience to represent a class, and the court finds that plaintiffs' counsel possess the necessary qualifications") (affecting approximately 10,000 poultry processing employees); *Guerrero et al v. Pro Klean, Inc.*, CA No.09CVS29529 (Mecklenburg County, Superior Ct. 2012) ("Ms. Hernandez has specialized experience in the field of wage and hour law.").

9. I have also been involved in many educational and legal groups, including the American Bar Association, National Employment Lawyers Association, the National Employment Law Project, the North Carolina Advocates for Justice, and the North Carolina Bar Association. In addition to authoring articles on a variety of employment and litigation-related subjects, I have lectured on various FLSA and NCWHA topics, including collective/class action litigation at meetings, conferences, and CLE programs sponsored by the National Employment Lawyers Association, the North Carolina Bar Association, and the North Carolina Advocates for Justice.

## *Nature of Plaintiff's Claims*

10. Defendant Craig Hutchison owns and operates Defendant Hutchison Tree Service (collectively "Hutchison Defendants"), providing tree care, trimming, and removal services. Hutchison Defendants contracted with Northstar to help with tree removal and clean up along Piedmont Gas' gas pipelines right of ways between 2012 and 2015.

11. Plaintiff Adrian Berber worked as a driver/foreman from November 2013 to June 2014 for Hutchison Defendants. He asserts claims under the federal Fair Labor Standards Act

4

("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23. Those claims include allegations that Plaintiff and all similarly situated were not permitted to record all of their time worked and were required to work in excess of forty (40) hours. On these grounds, Plaintiff sought to recover on his behalf, as well as on behalf of two classes, FLSA (opt-in plaintiffs) and Rule 23 (opt-out) class members, consisting of workers who were not paid for pre- and post-shift activities and travel time between jobsites, unpaid wages, overtime pay, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

### ***The Litigation and Settlement Negotiations***

12. On August 3, 2015, Adrian Berber filed a complaint in the U.S. District Court for the Eastern District of North Carolina, raising putative collective-action claims under the FLSA and putative class-action claims North Carolina state law. (*See* Dkt. No. 1.) In November of 2015, the parties participated in a failed mediation with private mediator Hunter Hughes III of Atlanta, Georgia.

13. On June 15, 2016, the Court issued its Scheduling Order, approving both parties' individual Rule 26(f) Reports. (*See* Dkt. No. 44.) Plaintiff's report suggested a pre-certification discovery period that closed on November 18, 2016 along with a deadline of December 19, 2016 to file a motion for conditional and/or class certification (Dkts. 38 and 44). Among other significant deadlines, the Court approved the parties' proposed plans that required the parties to meet and confer to reassess the parties' claims and defense and the possibility of reaching a resolution of the case following the Court's ruling on Plaintiff's motion for conditional/class certification. *Id.*

14. On June 17, 2016, Plaintiff served Defendants with his First Set of Interrogatories and Requests for Production of Documents.

15. On November 14, 2016, the Parties jointly moved to extend the initial discovery deadline and motion for conditional certification deadline by twenty (20) days, which the Court granted. (Dkts. No. 51, 55). The deposition of Defendant Craig Hutchison, the 30(b)(6) corporate designee for Defendant Hutchison Tree Service, was taken December 8, 2016.

16. On January 6, 2017, Plaintiff filed a motion requesting conditional certification of the FLSA claims as a collective action, to certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) and authorization to send court-supervised notice to potential participants in that collective/class action and for the appointment of class counsel. (Dkt. 58). On September 27, 2017, the Court denied without prejudice Plaintiff's motion for conditional certification and ordered the parties to engage in a court-hosted settlement conference (Dkt. No. 81).

17. On December 7, 2017, the parties participated in a court-hosted settlement conference with Magistrate Judge Gates, which ultimately led to the parties reaching an impasse in settlement negotiations. (Dkts. 88, 90).

18. Following the failed negations, Plaintiff resubmitted his motion for conditional certification pursuant to the FLSA and for class certification pursuant to Fed. R. Civ. P. 23 on April 5, 2018. On August 14, 2018, the Court granted Plaintiff's renewed motion for conditional/class certification and dismissed the defendants Piedmont and Northstar. (*See* Dkt. No. 95.). Following the Court's dismissal of defendants Piedmont and Northstar, Plaintiff filed a Notice of Appeal. (Dkt. No. 98). On August 28, 2018, the Parties' counsel met and conferred regarding the schedule for future proceedings. At this conference, the parties mutually expressed an interest in exploring settlement options and subsequently jointly filed for an extension of time in order to reopen settlement negotiations and organize a mediation. Acknowledging the Notice of

Appeal was premature and wanting to encourage good-faith negotiations, Plaintiff moved to dismiss the appeal without prejudice, which the Court subsequently granted. On August 31, 2018, the Court granted the parties' request for an extension of time. (Dkt. No. 97).

19. Following the Court's August 14 Order, the Parties again met with Mediator Hunter Hughes in Atlanta, Georgia on October 19, 2018. At the end of the day, the Parties agreed to leave mediation with Hunter Hughes open in order to finalize terms of a settlement agreement.

20. On October 30, 2018, the Parties filed a Joint Notice of Settlement with Court. (Dkts. No. 105).

### *Plaintiff's Initial Investigation of Potential Claims*

21. Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses. This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification.

22. The parties exchanged discovery, and the pre-certification deadline expired on December 8, 2016. (*See* Dkt. No. 55.)

23. In addition to sorting through defendants' discovery, Class Counsel also conducted in-depth interviews with each of the named and opt-in Plaintiffs, for a total of about twenty-two (22) Plaintiffs, to determine the hours that they individually worked, the number of hours that they worked for which they were not paid, their rate of pay, approximately how many hours they worked per day and/or per week, whether they engaged in loading/unloading activities and how long such activity took, in addition to travel time, and if so for how long, the wages they were paid, and other information relevant to their claims and those of other putative plaintiffs and Rule 23 class members. Class Counsel also obtained and reviewed numerous documents from named

Plaintiffs related to their employment with Defendant, including pay records and other related documents.

24. Throughout litigation, Class Counsel has maintained contact with each named and opt-in plaintiff, addressing concerns and providing progress updates throughout litigation.

## *Risk of Litigation*

25. Plaintiff believes the claims asserted in the Litigation have merit under the FLSA and North Carolina law. However, Plaintiff recognizes the cost and delay of continued proceedings necessary to prosecute the instant action against Defendants through discovery, dispositive motions, trial, and appeal. Plaintiff has also taken into account the uncertain outcome and the risk of loss in any litigation, especially in a complex collective/class-action such as this. Plaintiff believes that the settlement set forth in this Agreement confers substantial benefits on Settlement Class Members, including, but not limited to, injunctive relief. Plaintiff has determined that the settlement is in the best interest of Named Plaintiff, Opt-in Plaintiffs, and the other members of the Settlement Classes.

## *The Settlement Fund*

26. Class Counsel believe the settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. These risks included the risk of having the collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Defendants prevailing as to the proper methodology for calculating overtime.

27. Here, Defendant has agreed to settle this case for an amount of $3 million, which Class Counsel believe is substantial.

28. Simultaneous with Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Expenses, Plaintiff has also filed Unopposed Motions for Preliminary Approval of Class and

Collective Action Settlement; Approval of Settlement Administrator and Approval of Plaintiff's Notice of Settlement.

## *Settlement Administrator*

29. Subject to Court approval, the parties intend to retain RG2 Claims Administration LLC., ("RG2") to administer the settlement. If the Court grants preliminary approval to the parties' proposed settlement, it is anticipated that once RG2 sends the Notice of Settlement, Class Counsel and staff will have to respond to numerous class members' questions about the terms of the settlement and the amount of their settlement award.

## *Time Spent on the Litigation*

30. As of November 6, 2010, both GAH and L&B have spent more than **1,416.80** hours litigating and settling this litigation, including time spent by attorneys, paralegals, and law clerks. Throughout this case, GAH and L&B made efforts to work efficiently and avoid duplication. For example, GAH took primary responsibility for drafting the complaint, first amended complaint preparing and serving discovery requests and taking Defendant Craig Hutchinson's 30(b)(6) deposition, motion for conditional/class certification along with the supporting declarations and documents, in addition to, preparing documents for mediation. As part of this process, GAH took primary responsibility for interviewing plaintiffs and coordinating with potential opt-ins plaintiffs. L&B took primary responsibility for calculating damages on an individual and class-wide basis, in addition to contributing to mediation negotiations and participating in the same. Only a small team of attorneys from both firms was utilized at any one time in order to minimize duplication of efforts and maximize billing judgment. GAH has up to date detailed time records with some redactions to protect attorney work product and attorney/client privilege, and they are available upon request for the Court's *in-camera* review.

31. The hours reported are reasonable for a case of this complexity and size. They were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

*GAH's Rate*

32. As a 22-year wage and hour practitioner, my current rate is $650.00 per hour for this type of litigation. Notably, though, all wage and hour class action lawsuits litigated by GAH are done so on a pure contingency fee basis, meaning GAH does not require clients to pay hourly fees or retainers and if a matter does not result in money recovery, GAH recovers no attorney's fees and is not reimbursed for any out-of-pocket expenditures. Since 2013, (when I started my practice), my rate has increased by less than 10%, from $595 per hour to $650 per hour, which is a fair change proportionate to the risk associated with contingency fees and the firm's growth, high demand, and increased experience in Wage and Hour litigation. GAH's rates are consistent with the usual and customary hourly rates for GAH's work performed in similar collective/class action matters, nation and state-wide. *See Rehberg v. Flowers Banking Co. of Jamestown, LLC,* No. 3:12-cv-00596, Dkt. 250 (W.D.N.C. June 30, 2017) (approving hourly rates ranging from $375 per hour (associate) to $975 per hour (partner); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving as reasonable rates ranging from $440 to $775 for partners and $295 to $525 for associates); *Dooley v. Saxton*, No. 1:12-cv-01207-MC, ECF No. 187 (D. Or. Oct. 19, 2015) (approving as reasonable rates ranging from $375 to $790 per hour); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (approving as reasonable "$240–$260 for paralegals, $415–$530 for associates, and $635–$775 for partners"); *Parker v. Dish Network, L.L.C.*, No. 4:11-cv-1457, ECF No. 63 (N.D. Cal. Feb. 13, 2012), granted, ECF No. 87 (Apr. 17, 2012) ($530 to $710 for partners and

$350 for associates)..

33.  GAH's hourly rate(s) have also been separately approved for payment by courts in other litigation. *See, e.g., Kincaid v. Courier Express/Charlotte, Inc.,* et al, 1:18-cv-707-AT, Dkt. 87 (N.D. Ga Jan. 31, 2019) ("Plaintiff's Counsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement Amount (i.e., $533,333.33) should the Court grant final approval. . .."); *Velasquez-Monterrosa v. Mi Casita Restaurants,* No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Sept. 26, 2017) (approving GAH's former $595 rate and approving one-third of the settlement fund for class counsel's attorneys' fees); *In Re Gentiva Health Services Inc.*, No: 1:14CV01892-WBH, Dkt. 113 (June 22, 2017) (approving GAH's former $595 rate as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *Tomkins v. Amedisys*, No. 3:12-cv-1082 (D. Conn. 2016) (approving GAH's $595 rate of two years ago as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *McLaurin v. Prestage Foods*, 2012 U.S. Dist. LEXIS 13086 (E.D.N.C. Feb. 3, 2012) (same, at the then-charged lower rate of $385 per hour, while GAH was a firm associate, not owner, and before attaining an additional seven years of collective/class action experience both locally and in nationwide actions, and stating, "[T]he court [allows] the motion for attorneys' fees and awards attorneys' fees . . . . [t]he court finds this amount to be reasonable in light of the complexity of the case, the history of the litigation, and the results obtained.").

*Class Counsels' Lodestar*

34.  As of February 28, 2018, GAH's lodestar is $471,252.5. Based on collaborative efforts between GAH and L&B, I understand L&B's lodestar in the case to be approximately $130,000. Class Counsel's total lodestar on the case, thus far, is approximately **$601,252.50**.

35. GAH's lodestar calculation is made based upon our current billing rates for each timekeeper, multiplied by their recorded hours.

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Hernandez, Gilda A. | Attorney | $650 | 539.3 | $329,870.50 |
| Michael B. Cohen | Attorney | $300 | 163.9 | $49,170.00 |
| Smiley, Emma | Attorney | $300 | 46.5 | $13,935.00 |
| Smith, Charlotte | Attorney | $275 | 105.2 | $28,930.00 |
| Kreuz, Rachael | Paralegal | $190 | 12.4 | $2,356.00 |
| Romero, Michelle | Paralegal | $110 | 14.2 | $1,562.00 |
| Nelson, Silvia | Paralegal | $190 | 212.3 | $40,337.00 |
| Prater, Josh | Paralegal | $190 | 26.8 | $5,092.00 |
| **Total** | | | | **$471,252.50** |

36. The time worked on this case overall is more substantial than the time set forth above. In this fee petition, I have excluded time worked by individuals who had very limited involvement in the litigation, generally assisting when the regular paralegals were unavailable, or any other time that I did not believe should be included in an exercise of the Firm's billing judgment. In total, I have excluded $6,525.00 of time. With this reduction, I believe that the remaining time was reasonably and necessarily expended in the prosecution of this action on behalf of Plaintiffs and Rule 23 class members. In addition, work was done even after the settlement in principle was reached. Such time includes, but is not limited to, working on and preparing the final draft of the settlement agreement, proposed notices, claim form, motion for preliminary approval, brief in support, fee petition, declaration, and motion for service awards, and that time is included here.

37. Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon procuring an award for their clients

and the proposed settlement class, including very significantly, injunctive relief.

38. The requested attorneys' fees, although based on time and effort already expended by GAH, if the Court grants preliminary approval of the parties' proposed settlement, will increase, as the Firm will also be required to draft and file a Motion for Final Approval and an accompanying memorandum, prepare for and attend the final fairness hearing, respond to Class Members' inquiries following the mailing of notice and the terms and amounts of their settlement awards, answer questions from the Settlement Administrator, and negotiate and possibly litigate disagreements with Defendants about the distribution of funds. In Class Counsel's experience, settlements of this nature and size require a substantial ongoing commitment.

39. If the Court grants final approval to the parties' proposed settlement, Class Counsel also expects to respond to more class member inquiries after that final approval order, especially after checks are issued.

40. In Class Counsel's experience, settlements of this nature and size require a substantial ongoing commitment. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make tremendous investment of time. Class Counsel stood to gain nothing in the event the case was unsuccessful.

### *Expenses Incurred in this Litigation*

41. As of February 28, 2019, 2018, Class Counsel have incurred a total of approximately **$27,064** in litigation costs to prosecute this litigation. As of February 28, 2019, Lee & Braziel, LLP has incurred approximately $16,825 in litigation costs, and GAH has incurred

approximately **$13,414.95**[2] in litigation costs (i.e., deposition and court hearing transcripts, postage, courier fees (UPS and FedEx), long distance, computer legal research, transportation, working meals, photocopies, and electronic research), and mediation costs. The expenses incurred were reasonable and necessary under the circumstances of this litigation. The expenses incurred in this action are reflected on the books and records of this firm. These books and records are prepared from invoices, expense vouchers, and other source materials and are an accurate record of the expenses incurred. The underlying invoices and receipts are available for inspection if the Court requests. The expenses incurred by our Firm can be divided into the following categories:

Detail of GAH Costs:

| Category | Amount |
| --- | --- |
| Eastern District of North Carolina Filing Fees<br>- Initial Filing<br>- Appeal | $905.00 |
| Service on All Defendants | $155.29 |
| Travel Expenses | $4,147.38 |
| Deposition | $1,646.27 |
| Printing | $194.56 |
| Mailing Expenses | $16.45 |
| Mediation Expenses | $6,350.00 |
| **TOTAL** | **$13,414.95** |

Class Counsel also anticipate incurring additional litigation expenses in travel, meals, and miscellaneous expenses relating to any potential upcoming fairness hearing, meetings with client(s) to discuss the potential fairness hearing, including any potential traveling to meet with them, ongoing long-distance communications with class members and opt-in plaintiffs (including

---

[2] As such, the request for $15,000.00 for attorneys' expenses and fees is in fact less than the litigation expenses already suffered by Plaintiff's counsel.

those out of the country) to discuss settlement payments before and after distribution of such payments, and any other miscellaneous expenses not anticipated. Thus, Plaintiffs' counsel request a total of $15,000.00 in litigation costs.

### ***Service Awards for named and opt-in Plaintiffs.***

42. Named Plaintiff Adrian Berber has made important contributions to the prosecution and fair resolution of this case on behalf of opt-in plaintiffs and Class Members.

43. He assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information regarding his job duties, job locations, compensation, and Defendants' recordkeeping and compensation practices and other information relevant to his claims.

44. Named Plaintiff Berber submitted numerous documents during pre-certification discovery as well as reviewed extensive documents during pre-certification discovery and discussed various aspects of the case and discovery issues as needed. Furthermore, he provided documents and a declaration, to support the same. He participated in the Court-hosted Settlement Conference and made himself available telephonically for other mediations when he could not personally attend. This service award reflects the significant contributions that he made to the case and the time and effort spent in producing and reviewing documents, in addition to, participating in multiple settlement negotiations on behalf of himself, opt-in Plaintiffs and Settlement Class Members.

45. Overall, his involvement in the case was instrumental to Class counsel's ability to prosecute these claims, and without his hard work, effort, and risks taken, the parties may not have been able to reach a settlement agreement at this stage.

I declare under penalty of perjury, under 28 U.S.C. § 1746, under the laws of North Carolina that the foregoing is true and correct to the best of my knowledge.

Executed this 28 February 2019

/s/Gilda Adriana Hernandez
Gilda A. Hernandez NCSB #36812
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

J. Derek Braziel,
Texas Bar. No. 00793380
**LEE & BRAZIEL, LLP.**
1801 N. Lamar St. Suite 325
Dallas, TX 75202
Phone: 214-749-1400
Fax: 214-749-1010
jdbraziel@l-b-law.com

*Attorneys for Plaintiffs*

**CERTIFICATION OF SERVICE**

I hereby certify that on February 28, 2019, I electronically filed the foregoing true and accurate copy of **DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTIONS FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; APPROVAL OF SETTLEMENT ADMINISTRATOR; APPROVAL OF PLAINTIFF'S NOTICE OF SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE AWARD** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Robert E. Boston
Tennessee State Bar No. 009744
Andrew S. Naylor
Tennessee State Bar No. 017128
**WALLER LANSDEN DORTCH & DAVIS, LLP**
511 Union Street, Suite 2700
Nashville, TN 27319
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: bob.boston@wallerlaw.com
Email: andy.naylor@wallerlaw.com

*Attorneys for Defendants*

        Respectfully submitted,

        /s/ *Gilda Adriana Hernandez*
        Gilda A. Hernandez (NCSB # 36812)
        **THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
        1020 Southhill Drive, Suite 130
        Cary, NC 27513
        Telephone: (919) 741-8693
        Facsimile: (919) 869-1853
        ghernandez@gildahernandezlaw.com

        J. Derek Braziel,
        Texas Bar. No. 00793380

**LEE & BRAZIEL, LLP.**
1801 N. Lamar St. Suite 325
Dallas, TX 75202
Phone: 214-749-1400
Fax: 214-749-1010
jdbraziel@l-b-law.com

*Attorneys for Plaintiffs*