IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| ADRIAN BERBER, on behalf of himself and all others similarly situated, | ) ) ) | |
| _Plaintiff,_ | ) ) | CA No. 5:15-CV-143-D |
| v. | ) ) | |
| HUTCHISON TREE SERVICE and CRAIG HUTCHISON, | ) ) ) | |
| _Defendants._ | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECIVE AND CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL & PROCEDURAL HISTORY .......................................................... 1

    A.   The Nature of Plaintiff's Claims ............................................................... 1

    B.   Procedural History ..................................................................................... 2

    C.   Settlement Negotiations ............................................................................. 4

    D.   Plaintiffs' Motion for Preliminary Approval ............................................ 5

    E.   CAFA Notices ............................................................................................ 6

III.    SUMMARY OF SETTLEMENT TERMS.......................................................... 6

    A.   Monetary Awards........................................................................................ 6

    B.   Eligible Employees ..................................................................................... 7

    C.   Releases....................................................................................................... 7

    D.   Tax Withholdings........................................................................................ 8

    E.   Allocation Formula ..................................................................................... 8

    F.   Attorneys' Fees, Litigation Costs, and Service Award............................. 9

    G.   Settlement Claims Administrator................................................................ 9

IV.    FINAL APPROVAL OF THE SETTLEMENT .................................................. 10

    A.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should be
       Approved in All Respects. ......................................................................... 10

    B.   The Proposed Settlement is Procedurally Fair........................................... 11

    C.   The Proposed Settlement is Substantively Fair ........................................ 12

        1.   Litigation Through Trial Would be Complex, Costly, and Long
           (Grinnell Factor 1) ........................................................................ 13

        2.   The Reaction of the Classes Has Been Positive (Grinnell Factor 2) ........ 14

        3.   Litigation and Discovery Have Advanced Far Enough to Allow the
           Parties to Resolve the Case Responsibly (Grinnell Factor 3) ................... 15

4.    Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell
      Factors 4 and 5) ....................................................................................... 16

5.    Maintaining the Class Through Trial Would Not Be Simple
      (Grinnell Factor 6) ................................................................................... 17

6.    Defendants' Ability to Withstand a Greater Judgment is Not
      Determinative (Grinnell Factor 7) ........................................................... 17

7.    The Settlement Fund is Substantial, Even in Light of the Best
      Possible Recovery and the Attendant Risks of Litigation (*Grinnell*
      Factors 8 and 9) ....................................................................................... 17

V.    APPROVAL OF THE FLSA SETTLEMENT .................................................... 19

VI.   CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001) ................................................................ 20

*Brown v. Delhaize Am., LLC*
2015 U.S. Dist. LEXIS 184265 (M.D.N.C. July 20, 2015) ............................ 16, 17

*City of Detroit v. Grinnell Corp.*
495 F.2d 448 (2d Cir. 1974) ......................................................... passim

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001 ................................................................ 10

*de la Cruz v. Chopra*,
2018 U.S. Dist. LEXIS 85213 (D. Md. May 21, 2018) ............................... 11

*Deem v. Ames True Temper, Inc.*,
2013 WL 2285972 (S.D.W. Va. May 23, 2013) ...................................... 14

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*
573 F. Supp. 2d 205 (D.D.C. 2008) .................................................... 15

*Evans v. Jeff D.*
475 U.S. 717 (1986) ..................................................................... 18

*Flinn v. FMC Corp.*
528 F.2d 1169 (4th Cir. 1975) ........................................................ 13

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ............................................... 17, 18, 19

*Hall v. Higher One Machs., Inc.*
2016 U.S. Dist. LEXIS 131009 (E.D.N.C. Sep. 26, 2016) ............................ 11

*Hoffmann-LaRoche Inc. v. Sperling*,
493 U.S. 165 (1989) ..................................................................... 20

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................. 14

*In re Austrian & German Bank Holocaust Litig.*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................... 15, 18

*In re Dollar Gen. Stores FLSA Litig.*
2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) ............................. 12

*In re MI Windows & Doors Prods. Liab. Litig.*
  2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015) ............................................. 16

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp.2d 654 (E.D. Va. 2001) ....................................................................... 13

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ......................................... 14

*In re Vitamins Antitrust Litig.*
  305 F. Supp. 2d 100 (D.D.C. 2004) ......................................................................... 15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .................................................................................... 10

*In re Warfarin*,
  391 F.3d 516 (3d Cir. 2004) .................................................................................... 15

*Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ................................................................................... 13

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) .................................................................................... 19

*Lomascolo v. Parsons Brinckerhoff, Inc.*
  2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009) ......................................... 11

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ............................................................................... 11

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 14

*Matthews v. Cloud 10 Corp.*
  2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015) ................................... 12

*McKenna v. Champion Intern. Corp.*,
  747 F.2d 1211 (8th Cir. 1984) ................................................................................. 20

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. 2010) ..................................................... 20

*Muhammad v. Nat'l City Mortg., Inc.*
  2008 U.S. Dist. LEXIS 103534 (S.D. W. Va. Dec. 19, 2008) ........................... 11, 13

*Newman v. Stein*
  464 F.2d 689 (2d Cir. 1972) .................................................................................... 18

*Riddle v. City of Anderson*,
  2015 U.S. Dist. LEXIS 192079 (D.S.C. Jan. 26, 2015)...................................................... 15, 16

*Robinson v. Harrison Transp. Servs., Inc.*
  2016 U.S. Dist. LEXIS 86294 (E.D.N.C. June 30, 2016) .................................................... 11, 12

*S.C. Nat'l Bank v. Stone*
  749 F. Supp. 1419 (D.S.C. 1990)................................................................................... 11, 13, 18

*Saman v. LBDP, Inc.*
  2013 U.S. Dist. LEXIS 83414 (D. Md. June 13, 2013)...................................................... 11, 12

*Vaughns v. Bd. of Educ.*
  18 F. Supp. 2d 569 (D. Md. 1998)............................................................................................. 14

*Velasquez-Monterrosa  v. Mi Casita Restaurants*
  No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017)........................................... 17

*Velazquez v. Burch Equip., LLC*
  2016 U.S. Dist. LEXIS 29426 (E.D.N.C. Mar. 8, 2016) ........................................................ 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................................................... 10

**Rules**
Fed. R. Civ. P. 23 (e) ......................................................................................................... 10, 11

## I. INTRODUCTION

Plaintiff submits this Memorandum of Law in support of his Unopposed Motion for Final Approval of the Collective and Class Action Settlement ("Plaintiff's Motion for Final Approval").[1] The Parties' settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiff seeks an Order approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") as well as approval of Plaintiff's unopposed motions for attorneys' fees and expenses and a service award. *See* Dkts. 112-118. On March 1, 2019, the Court took the first step in the settlement-approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing as well as approving attorneys' fees and expenses and the requested service award. *See* Dkt. 120-22. As of May 17, 2019, no Class members have opted out of the settlement, and none have objected to it. *See* Dkt. 125 at ¶ 11-12.[2] With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## II. FACTUAL & PROCEDURAL HISTORY

### A. The Nature of Plaintiff's Claims

Defendants are in the business of offering various tree services, such as tree pruning, tree removal, tree trimming, land clearing, and stump grinding. *See* Dkt. 1 ¶ 7.

Plaintiff Adrian Berber worked as a driver and foreman for Defendants Hutchison Tree Services and Craig Hutchison ("Defendants"), helping to clear right of ways along Piedmont

---

[1] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

[2] *See* Dkt. 125, Declaration of Tina Chiango, RG/2 Claims Administration LLC ("RG/2") Director of Claims.

Natural Gas Inc.'s pipelines in North Carolina. *See id.* ¶¶ 29-30. He asserts claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA") pursuant to Fed. R. Civ. P. 23. *See id.* ¶¶ 1-2. Those claims include allegations that Hutchison Defendants failed to ensure that non-exempt, lump-sum, or hourly-paid employees were properly paid for all of the time they worked. *See id.* ¶¶ 65-67. On these grounds, Plaintiff seeks to recover on his behalf, as well as on behalf of a class of similarly situated individuals who filed consents to participate in this action as party plaintiffs and on behalf of a R.23 class of individuals consisting of individuals who worked on Piedmont Natural Gas Inc.'s gas pipelines and right-of-way throughout, at a minimum, various parts of North Carolina, for their unpaid wages, overtime pay, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs. *See id.* ¶¶ 6, 72.

B.    Procedural History

Although Phase II discovery had not yet begun in this case, this case has already been pending for over four years as a result of extensive litigation over a variety of motions. *See* Dkt. 1 (showing that the Complaint was filed on April 3, 2015). This section provides a brief summary of the most significant of these disputes, though a number of smaller issues have also required significant briefing by both sides.

On April 3, 2015, Adrian Berber filed a complaint in the U.S. District Court for the Eastern District of North Carolina, raising putative collective-action claims under the FLSA and putative class-action claims North Carolina state law. *See id.* ¶ 1.

On June 15, 2016, the Court issued its Scheduling Order, approving both Parties' individual Rule 26(f) Reports. (*See* Dkt. No. 44.) Plaintiff's report called for a pre-certification discovery period that closed on November 18, 2016 with a deadline of December 19, 2016 to file a motion for conditional and/or class certification (Dkts. 38 and 44). Among other significant deadlines,

the Court approved the Parties' proposed plans that required the Parties to meet and confer to reassess the Parties' claims and defenses and the possibility of reaching a resolution of the case following the Court's ruling on Plaintiff's motion for conditional/class certification. *Id.* Consistent with the Parties' Phase I discovery plan, Plaintiff served Defendants with his First Set of Interrogatories and Requests for Production of Documents on June 17, 2016.

On November 14, 2016, the Parties jointly moved to extend the initial discovery deadline and motion for conditional certification deadline by twenty (20) days, which the Court granted. (Dkts. No. 51, 55). The deposition of Defendant Craig Hutchison, the 30(b)(6) corporate designee for Defendant Hutchison Tree Service, was taken December 8, 2016.

On January 6, 2017, Plaintiff filed a motion requesting conditional certification of the FLSA claims as a collective action, to certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) and authorization to send court-supervised notice to potential participants in that collective/class action and for the appointment of class counsel. (Dkt. 58). On September 27, 2017, the Court denied without prejudice Plaintiff's motion for conditional certification and ordered the parties to engage in a court-hosted settlement conference (Dkt. No. 81).

On April 5, 2018, following a failed court-hosted settlement conference in conference in December 2017, Plaintiff resubmitted his motion for conditional certification pursuant to the FLSA and for class certification pursuant to Fed. R. Civ. P. 23. On August 14, 2018, the Court granted Plaintiff's renewed motion for conditional/class certification and dismissed Defendants Piedmont and Northstar, certifying the Rule 23 class of individuals. (*See* Dkt. No. 95.) On September 7, 2018, following the Court's dismissal of Defendants Piedmont and Northstar, Plaintiff filed a Notice of Appeal. (Dkt. No. 98). On August 28, 2018 and pursuant to the Court's Order, the

Parties' counsel met and conferred regarding the schedule for future proceedings. At this conference, the parties mutually expressed an interest in exploring settlement options and subsequently jointly filed for an extension of time in order to reopen settlement negotiations and prepare for another mediation. On August 31, 2018, the Court granted the Parties' request for an extension of time. (Dkt. No. 97). On October 5, 2018, acknowledging the Notice of Appeal was premature and wanting to encourage potential negotiations, Plaintiff moved to dismiss the appeal without prejudice, which the Court subsequently granted.

      C.    <u>Settlement Negotiations</u>

With respect to the Parties' settlement negotiations, throughout the course of this litigation, the Parties met multiple times to attempt reaching a resolution in this matter. Prior to the Court issuing its June 15, 2016 Scheduling Order, Plaintiff contacted Defendants and suggested that it might be appropriate to agree on potential mediation dates. The Parties subsequently employed private mediator Hunter Hughes III of Atlanta, Georgia, an attorney with extensive experience in the mediation of complex wage and hour actions, as a neutral third-party mediator to assist them in their attempt to reach a settlement. In November 2015, the Parties participated in a failed mediation with Hunter Hughes.

As stated above, on December 7, 2017, the Parties participated in a court-hosted settlement conference with Magistrate Judge Gates, which lasted several months. However, on April 5, 2018 and following an impasse in the Parties' settlement negotiations, (Dkt. 90), Plaintiff refiled his Motion for Conditional Certification and Class Certification. (*See* Dkt. 95). Given the Court's August 17, 2018 Order, granting Plaintiff's motion for conditional/class certification, but also dismissing Defendants Piedmont and Northstar, the Parties' expressed further interest in participating in another round of mediation. Accordingly, on October 19, 2018, the Parties met with Mediator Hunter Hughes in Atlanta, Georgia. With the assistance of the mediator, Mr.

4

Hughes, and following an exchange and review of extensive documentation and additional intense settlement negotiations, the Parties reached a tentative settlement agreement.

On October 30, 2018 and following two weeks of intense settlement negotiations, the parties reached a mutually agreeable settlement of the litigation and filed a Joint Notice of Settlement with the Court. (Dkts. No. 105). The parties reached the Stipulation and Settlement Agreement described below on February 28, 2019. (Dkt. 113-1).

D.  Plaintiffs' Motion for Preliminary Approval

On February 28, 2019, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Stipulation and Settlement Agreement, to (1) provisionally grant preliminary approval of the proposed class and collective action settlement; (2) approve the appointment of RG2 Claims Administration LLC., as settlement administrator; and (3) approve the proposed notice of the settlement and claim forms. (Dkt. No. 112).

On March 1, 2019, the Court provisionally approved (1) the Parties' Stipulation and Settlement Agreement; (2) the proposed Notices for mailing, consistent with the procedures outlined in the Parties' Stipulation and Settlement Agreement, to FLSA collective members who, pursuant to 29 U.S.C. § 216(b), consented to participate in Plaintiffs' Fair Labor Standard Act claims and to members of the class certified pursuant to Fed. R. Civ. P. 23(b)(3); (3) the appointment of RG/2 as the Settlement Administrator. (*See* Dkt. No. 121).

Also, consistent with the Parties' Stipulation and Settlement Agreement, the Court set the deadline for members of the certified class to submit claim forms, opting out of the settlement, or submitting an objection as sixty (60) days after the mailing of the notice of settlement. *See id.* The Parties were given seventy-five (75) days from the mailing of the notice of settlement to respond to any objections. *Id.* Pursuant to Rule 23 (e) of the Fed. R. Civ. P., the Court scheduled a fairness

hearing for May 21, 2019 at 3:00 p.m. to determine whether the proposed Settlement Agreement is fair. *Id.*

Finally, RG/2 was appointed to serve as the neutral, third-party Settlement Administrator in this case, *id.*, and consistent with the parties' settlement agreement, the Court ordered and authorized RG/2 to perform the administrative duties as outlined in its March 1, 2019 Order. *Id.*

E.    CAFA Notices

Following the Court's order granting preliminary approval to the Parties' proposed settlement, Dkt. No. 121, Defendant sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on March 8, 2019. *See* 28 U.S.C. § 1715(d).[3] The 90-day CAFA notice period concludes on June 6, 2019. *Id.* No federal or state authorities have commented on the settlement or objected to it. *Id.*

III.    **SUMMARY OF SETTLEMENT TERMS**

A.    Monetary Awards

The Settlement Agreement creates a gross settlement fund in the amount of $3,000,000, which covers all awards to Rule 23 Class and FLSA Class members, a service award to named plaintiff, attorneys' fees and expenses, settlement administration fees, and litigation costs, including the fees of the mediator which have been prepaid by Defendant and will be deducted from the settlement fund. *See* Dkt. 113-1, § II(A)(8). It provides that Current Participants, or individuals who opted into this action prior to settlement, shall receive approximately sixty percent (60%) of their actual two-year damage calculation of their damages (less applicable taxes). *See id.* at § II(A)(2). Authorized Claimants, or Rule 23 Class members and FLSA Class members who

---

[3] On March 8, 2019, Defendants sent notice to the United States Attorney General and the Attorney Generals of Florida, Tennessee, North Carolina, South Carolina, and Ohio.

timely return a claim form, will receive a share of the Revised Gross Settlement Amount, proportionate to their estimated actual damages as compared to the total estimated damages for the entire class. *Id.* at II.G. Plaintiffs estimate the average award for class members will be approximately $18,910.69.

B.  <u>Eligible Employees</u>

The Settlement Agreement defines the classes of persons who were eligible to submit claims under this settlement as:

(i)    The Opt-in Plaintiffs and Current Participants, as defined [in the settlement agreement, Dkt. 113-1 at 7][4], who have not withdrawn their consent to participate in Named Plaintiff's FLSA claims as Party Plaintiffs; or

(ii)   the Rule 23 Class Members who were employed by Hutchison Defendants and performed work on Piedmont's natural gas pipelines and rights-of-way in North Carolina at any time from April 3, 2012, until the termination of the contract, or until approximately January 2015.

*See* Dkt. 121-1, § II(A)(27) (hereinafter "Settlement Classes").

C.  <u>Releases</u>

Upon approval by the Court, the Settlement Agreement shall bind the members of the Settlement Classes to all terms set forth in the Settlement Agreement, regardless of whether any particular member of the Settlement Classes timely submits the submits a required claim form, or receives a Settlement Payment, described herein in Dkt. 113-1, Parts II.I, II.J.3, and II.K, so long as such individual has not timely opted out of settlement pursuant to the opt-out procedures described in Part II.J.3 of the settlement agreement. *See id.*

---

[4] The settlement agreement defines "Current Participants" as "all individuals who previously have opted into this action and who otherwise fall within the definition of the Settlement Class or Settlement Collective Action, will not be required to submit a required claim form, as these individuals have already opted into the action and have actively participated in the prosecution of this Litigation. . .." and identifies by name the 22 individuals who fall within this category. *See* 113-1, § II(A)(2).

D.    Tax Withholdings

Each Authorized Claimant shall receive their payment, separated into two equal amounts, with 50% allocated for unpaid overtime and unpaid wages and 50% allocated for liquidated damages and other relief under the FLSA and NCWHA. Dkt. 113-1, § II(H). The Settlement Administrator will report the portion of the Settlement Payment made to each Authorized Claimant attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099. The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each Authorized Claimant and mailing the settlement checks, Form W-2s, and Form I 099s to each such individual.

E.    Allocation Formula

The actual amount that each participating Opt-in Plaintiff will receive will be determined pursuant to an allocation formula that reflects the relative value of their claims under Plaintiff's theory of the case and is based on Plaintiff's estimate of the actual amount of overtime that each participating opt-in plaintiff would have earned, had all hours of work been reported and properly calculated. Specifically, Opt-in Plaintiffs and/or current participants identified by name will be entitled to 60% of their actual two-year damages. Dkt. 113-1, § II(A)(2). Each Authorized Claimant who timely returns the claim form will be entitled to receive a share of the Revised Gross Settlement Fund, proportionate to their estimated actual damages as compared to the total estimated damages for the entire class. Specifically, funds will be allocated on a pro rata basis. *Id.* at § II(G).

To the extent that any member of the Rule 23 Settlement Class does not timely submit the required claim form, chooses to opt out of the settlement, or otherwise elects not to accept their designated share of the Revised Gross Settlement Amount, their share will remain the sole and

8

exclusive property of Defendants. *Id.* at § II(K). However, under no circumstances will Current Participants' damages remit back to Defendants. *Id.*

F. Attorneys' Fees, Litigation Costs, and Service Award

Class Counsel filed a Motion for Attorneys' Fees and Reimbursement of Expenses, in addition to a Motion for Approval of Service Awards, both of which the Court approved on March, 1, 2019. *See* Dkts. 114-118; 120.

G. Settlement Claims Administrator

The parties retained RG/2 to administer the settlement. As stated, *supra*, the Court approved RG/2 as the Parties' settlement administrator and authorized it to perform administrative duties outlined in its March 1, 2019 Order. Dkt. 121.

On March 5, 2019, Plaintiffs' counsel provided RG/2 with a spreadsheet ("Opt-in Plaintiff List") containing the names and address for 21 opt-in plaintiffs. On March 6, 2019, Defendants' Counsel provided RG/2 with a spreadsheet ("Class List") containing, among other things, the names and last known addresses for 83 Class Members.

RG/2 thereafter formatted the Notices so that they were personalized for each recipient. On March 15, 2019 (the "Notice Date"), RG/2 mailed the Notices by first class-mail, postage prepaid, from Philadelphia, Pennsylvania, to both FLSA and R.23 Settlement Class Members identified on the Class List. *See* Dkt. 125 at ¶ 8. On April 15, 2019, RG/2 mailed Reminder Notices by first class-mail, postage prepaid to the both FLSA and R.23 Settlement Class Members. *See id.* at ¶ 10. For Class members whose initial Notices were returned as undeliverable, RG/2 promptly undertook standard skip-tracing procedures and possible new addresses were obtained for 26 of them. *Id.* at ¶ 9. As of May 16, 2019, 18 Notices were returned to RG/2 for which no valid address could be located. *Id.* A total of 17.3% Settlement Class Members (or approximately 17.3% of the settlement class) have Notice mailings that remain classified as undeliverable. *Id.*

Both the Opt-in Notice and the Rule 23 Notice provided a deadline of May 14, 2019 for Class Members to object to the Settlement by filing an objection with the Court and serving counsel for the respective parties. *Id.* at ¶ 8. The Rule 23 Notice provided a deadline of May 14, 2019 for those Class Members to submit a Claim Form for payment. *Id.* As of May 17, 2019, no Class Members have requested exclusion, and none have objected to the settlement. *Id.* at ¶¶ 11-12.

As of May 17, 2019, a total of 31 Class Members (between those who opted into the litigation early and those who sent back the claim forms), have submitted timely and complete Claim forms. *See* Dkt. 125 at ¶ 13.

## IV. FINAL APPROVAL OF THE SETTLEMENT

### A. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects.

The Plaintiffs move for final approval of the settlement described above. As this settlement is both procedurally and substantively fair and adequate, the Court should grant Plaintiff's Unopposed Motion.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine "the negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation and internal quotation marks omitted); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

Courts within the Fourth Circuit favor compromise and settlement of class action suits. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D.

Md. May 21, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)) (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable); *Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted); *Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same); *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) ("Litigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits."); *Muhammad v. Nat'l City Mortg., Inc.*, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D. W. Va. Dec. 19, 2008) ("A settlement compromising conflicting positions in class action litigation serves the public interest."); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.  This policy is particularly appropriate than in class actions.") (citations omitted).  Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2). Because the settlement agreement reached in the instant case is both procedurally and substantively fair, the Court should grant Plaintiff's Motion for Final Approval.

B.  The Proposed Settlement is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims.  *See Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *6 (E.D.N.C. June 30, 2016); *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *12 (D. Md. June 13, 2013); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12

11

(E.D.N.C. Aug. 22, 2011). Where negotiations are conducted at arms-length and in the presence of both counsel and an experienced mediator, there is a presumption that the settlement they achieved meets the requirements of due process." *See Matthews v. Cloud 10 Corp.*, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); *see also Robinson*, 2016 U.S. Dist. LEXIS 86294, at *6; *Saman*, 2013 U.S. Dist. LEXIS 83414, at *12; *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12.

Here, the settlement was reached after Class Counsel conducted a thorough investigation and significant litigation, and evaluated the claims and defenses, and after extensive arm's-length negotiations between the parties. *See* Dkt. 118 ¶¶ 12-24. The parties participated in multiple full-day mediation sessions with an experienced employment mediator. *Id*. at ¶¶ 12, 17, 19. Over the two weeks following the final mediation, the parties continued working in order to finalize terms of a settlement agreement. *Id*. at ¶ 20. Over the next several months, the parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. *See* Dkt. 113 (filed February 28, 2019). These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *Cf. Robinson*, 2016 U.S. Dist. LEXIS 86294, at *5-6 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (quotations omitted).

C. The Proposed Settlement is Substantively Fair

The Fourth Circuit evaluates substantive fairness and adequacy considering the factors from the seminal case of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), to analyze the substantive fairness of a class action settlement. *See DeWitt v. Darlington Cnty, S.C.*, 2013

U.S. Dist. LEXIS 172624, at *9-10 (D.S.C. Dec. 6, 2013); *Stone*, 749 F. Supp. at 1423; *see also*

*Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (citing *Grinnell* with approval). The

*Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the

reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery

completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks

of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater

judgment; (8) the range of reasonableness of the settlement fund in light of the best possible

recovery; and (9) the range of reasonableness of the settlement fund to possible recovery in light

of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.[5] Here, the balance of the *Grinnell*

factors weighs in favor of approval.

     1.    <u>Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1)</u>

"Settlement of the complex disputes often involved in class actions minimizes the litigation

expenses of both parties and also reduces the strains such litigation imposes upon already scarce

judicial resources." *Stone*, 749 F. Supp. at 1423 (citations omitted); *see also Muhammad*, 2008

U.S. Dist. LEXIS 103534, at *14 ("The complexity, expense, and duration of class action litigation

---

[5]Alternatively, courts in this circuit have considered factors separately grouped under "fairness" (the posture of the case, the extent of discovery conducted, the circumstances surrounding the negotiations, and the experience of counsel) and "adequacy" ((1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strength of the defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement). *Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp.2d 654, 665 (E.D. Va. 2001). Section IV(A) on procedural fairness addressed the third and fourth factors under "fairness," while the first two factors correspond to *Grinnell* factor 3. With respect to adequacy, factors 1 & 2 are encompassed by *Grinnell* 4-6 and 8-9; factor 3 is the same as *Grinnell* 1; factor 5 is the same as *Grinnell* 2; and factor 4 is the same as *Grinnell* 7. Thus, while the discussion is organized to correspond to the *Grinnell* factors, all *Jiffy Lube* factors are encompassed by the discussion as well.

are factors that support approval of a settlement."); *Vaughns v. Bd. of Educ.*, 18 F. Supp. 2d 569, 579 (D. Md. 1998).

This litigation has already lasted for over four years, and general, class-wide merits discovery would involve written discovery from every single opt-in plaintiff and multiple depositions. As summarized above, there has been extensive briefing and argument regarding Plaintiff's motion for conditional/class certification. *See supra* § II.A. Indeed, nearly every issue in this case has been hotly contested by the parties and has been the subject of briefing and counter-briefing. It is reasonable to expect that the case will only become more contentious and complex as it enters fuller discovery and trial preparation stages. Moreover, even post-trial, the ultimate result—regardless of which side prevails—will likely be the subject of an appeal and possible remand. In short, this litigation has already been long, complex, and costly and will only become more so as trial approaches. This factor thus weighs in favor of final approval.

2.    The Reaction of the Classes Has Been Positive (Grinnell
       Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted). The lack of class member objections "the fairness of a settlement." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *19 (S.D.N.Y. May 1, 2008) (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013).

Here, the Notices sent to Class Members included a personalized estimated settlement amount they may receive, the claims they would be releasing as part of the settlement, their right to object to or exclude themselves from the settlement, as well as an explanation of how to do so.

14

*See* Dkt. 125 at ¶¶ 8. No Class Members have requested exclusion, and none have objected to the settlement. *Id*. at ¶¶ 11-12.

### 3. Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)

"[C]ourts have a duty to ensure that the settlement does not 'come too early to be suspicious nor too late to be a waste of resources,' and that it is at 'a desirable point in the litigation to reach an agreement without further delay, expense, and litigation.'" *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 212-13 (D.D.C. 2008) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004)). The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d 516, 537 (3d Cir. 2004); *see also Riddle v. City of Anderson*, 2015 U.S. Dist. LEXIS 192079, at *16 (D.S.C. Jan. 26, 2015) (finding that because both sides were fully aware of the factual issues, sufficient discovery had taken place). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).

While full Phase II discovery was just starting when the parties reached their proposed settlement, there had already been a substantial amount of discovery in this case – both formal and informal. The Parties exchanged discovery, Defendants produced extensive payroll information for the opt-in Plaintiffs and Rule 23 class members, a 30(b)(6) deposition of Defendant Craig Hutchinson had been taken, and the master service agreement for the contract in question had been produced, in addition to documentation on food and lodging expenses. Of particular note is the fact that Defendants provided Plaintiffs with detailed payroll data for all of the opt-in plaintiffs

15

and Rule 23 class members before and following mediation, to allow for an evaluation of their claims and the calculation of damages. Plaintiff's counsel have also had the benefit of informal and formal discovery from all of the opt-in Plaintiffs and Rule 23 class member(s). Moreover, extensive briefing on conditional/class certification has provided Plaintiffs and their counsel with a wealth of information, all of which has allowed them to adequately evaluate the strengths and weaknesses of their case. Counsel was thus in a strong position to negotiate a fair settlement and advise the Named Plaintiff of the advantages and disadvantages of litigating through trial. This factor thus weighs in favor of final approval.

4.     <u>Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5)</u>

"In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted); *Brown v. Delhaize Am., LLC*, 2015 U.S. Dist. LEXIS 184265, at *5 (M.D.N.C. July 20, 2015) (same); *Riddle*, 2015 U.S. Dist. at *18 (same). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted). Notably, when considering the expense and delay inherent in prolonged litigation and possible appeals, settlement may be "an extremely viable alternative." *Riddle*, 2015 U.S. Dist. 192079, at *18. A court should consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted);

A trial on the merits would involve significant risks for Plaintiffs. The Plaintiffs will have to overcome probable attempts to decertify the FLSA collective and Rule 23 certification.

16

Although the Plaintiffs are confident that they could survive a motion for decertification, and prevail on both liability and damages, the Named Plaintiff and their counsel are also realistic and recognize the inherent risks. Even if Plaintiffs prevail, this victory could only be obtained after extensive briefing and argument of an uncertain duration, and the process of trial and appellate litigation is always full of uncertainty. These factors thus weigh very strongly in favor of final approval.

5.        Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6)

Plaintiffs are confident in their ability to maintain certification of the FLSA and Rule 23 classes. However, Plaintiffs and their counsel recognize that despite substantial briefing and argument, there will still be uncertainty, especially once more extensive discovery begins, as provided above. *See Brown,* 2015 U.S. Dist. LEXIS 184265, at *5. This factor thus weighs in favor of approval.

6.        Defendants' Ability to Withstand a Greater Judgment is Not Determinative (Grinnell Factor 7)

There is no evidence here as to whether or not the Defendants could withstand a greater judgment. However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017). Thus, given that all of the other *Grinnell* Factors weigh in favor of the proposed settlement, this factor should not be an obstacle to final approval.

7.        The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Approval of a class action settlement as reasonable under the relevant circumstances is within the sound discretion of the district court. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *Stone*, 139 F.R.D. at 339. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Based on Plaintiff's estimates and calculations of the probable amount of overtime that would be due to members of the FLSA and Rule 23 Settlement Classes if Plaintiffs were to prevail on all of their claims, $3 million is a reasonable settlement, particularly when factoring in the uncertainties of litigation. Specifically, Plaintiff's counsel analyzed the payroll data Defendants provided as part of the mediation process and estimated that using a pro-rated methodology for the Rule 23 Class members, that the Rule 23 and FLSA Settlement Class members were entitled to approximately $4.5 million in unpaid overtime using the methodology described above at 7-8.[6]

---

[6]Plaintiff's counsel was able to precisely calculate the amount owed to approximately 104 opt-in Plaintiffs and Rule 23 class members based on the data provided by the Defendants; Plaintiff's counsel then estimated the amount that would be payable to the Rule 23 Class members by extrapolating from the data provided by the Defendants, including, but not limited to, additional hours worked, as obtained from Early Opt-In FLSA Collective Members and comparing the amounts payable to "opt-in" Plaintiffs with similar characteristics. Defendants, however, rejected Plaintiff's calculations, and presented their own estimate of maximum potential damages, which was substantially lower than Plaintiff's estimate. Though Defendants do not agree to the final

Defendants, on the other hand, have asserted throughout the settlement negotiations that the Plaintiff's calculations utilized the incorrect overtime methodology. While Plaintiff insists that the appropriate overtime methodology should be time and one-half, determining the rate based on a forty (40) hour workweek and wages including the regular pay plus lodging and food benefits, Defendants have asserted that Plaintiffs' weekly "salary" was meant to include forty (40) hours of work at a straight time rate and then 15 or 20 hours of overtime pay at *half* of the straight time rate, which did not include housing.[7] If Defendants were to prevail on these issues at trial, Plaintiff's estimated damages would be reduced to an amount that is *substantially* less than the current settlement amount. Given this risk to Named, Opt-ins/Current Participants and R.23 class members, this settlement is beneficial in that it provides a guaranteed monetary recovery that is potentially more generous than if the parties litigated this issue, and the Court ruled in favor of Defendants. Thus, the settlement amount here far exceeds the mere fraction of possible damages that has been approved in other cases in this Circuit.

* * *

Thus, because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## V.    APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v.*

---

damages number calculated by Plaintiffs, the Parties continued negotiating and compromised, including Defendants' agreement to injunctive relief as part of the Settlement Agreement.

[7] *See* Dkt 59-1 at 63:12-64:8, 103:24-104:10; 107:14-108:1, 109:4-14. It is Defendants' position that to the extent that any class members worked overtime hours that were off the clock, that the amount claimed is significantly overstated.

*Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. 2010). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *16. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *16. Because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final approval of the class settlement and the FLSA settlement.

Dated: May 20, 2019

Respectfully submitted,

BY:  /s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB # 36812)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**

20

1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

J. Derek Braziel,
Texas Bar. No. 00793380
**LEE & BRAZIEL, LLP.**
1801 N. Lamar St. Suite 325
Dallas, TX 75202
Phone: 214-749-1400
Fax: 214-749-1010
jdbraziel@l-b-law.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2019, I electronically filed the foregoing true and accurate copy of **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECIVE AND CLASS ACTION SETTLEMENT** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Robert E. Boston
Tennessee State Bar No. 009744
Andrew S. Naylor
Tennessee State Bar No. 017128
**WALLER LANSDEN DORTCH & DAVIS, LLP**
511 Union Street, Suite 2700
Nashville, TN 27319
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: bob.boston@wallerlaw.com
Email: andy.naylor@wallerlaw.com
*Attorneys for Defendants*

Respectfully submitted,

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB # 36812)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

J. Derek Braziel,
Texas Bar. No. 00793380
**LEE & BRAZIEL, LLP.**
1801 N. Lamar St. Suite 325
Dallas, TX 75202
Phone: 214-749-1400
Fax: 214-749-1010
jdbraziel@l-b-law.com
*Attorneys for Plaintiffs*

22